EDDIE KENNETH SMITH v. McDOWELL COUNTY BOARD OF EDUCATION, KEITH WELDON GILLESPIE, AND ROY HOLLIFIELD

No. 8329SC677

(Filed 5 June 1984)

Schools § 11— accident involving driver education vehicle—not school transportation service vehicle—state court rather than Industrial Commission retaining jurisdiction

In an action arising from an automobile accident involving a driver education vehicle owned by a county·board of education, the trial court erred in finding the driver education vehicle was a "school transportation service vehicle" and, as such, finding that the vehicle came under the exclusive jurisdiction of the Industrial Commission, pursuant to G.S. 143-300.1. G.S. 115C-42, G.S. 115C-215, and G.S. 115C-216(a).

APPEAL by plaintiff from *Burroughs, Judge.* Order entered 15 February 1983 in Superior Court, MCDOWELL County. Heard in the Court of Appeals 11 April 1984.

This is an action brought by plaintiff, Eddie Kenneth Smith, for personal injuries resulting from a collision between a vehicle operated by the plaintiff and a driver education vehicle owned by the McDowell County Board of Education and operated at the time by a student driver (defendant Keith Weldon Gillespie), under the control and supervision of a driver education instructor (defendant Roy Hollifield). Plaintiff's complaint alleged the following: On 10 August 1978, plaintiff, a Deputy Sheriff, was operating a McDowell County Sheriff's Department car on an emergency call, traveling west on Highway 70 in McDowell County, near Marion, North Carolina. The defendant, Keith Weldon Gillespie, was operating a driver education vehicle under the supervision of Roy ·Hollifield. The vehicle is owned by the McDowell County Board of Education. With the blue light flashing and siren on, plaintiff was attempting to pass defendants' vehicle when said vehicle turned left into the path of plaintiff's vehicle, causing a collision and serious bodily injury to plaintiff. The complaint was later amended to allege that the McDowell County Board of Education has purchased liability insurance and thus waived its governmental immunity to the extent of the coverage, pursuant to G.S. 115C-42.

A motion, answer and counterclaim was filed by defendants on 29 October 1981. In addition, the defendants served a motion to amend their answer to allege the lack of subject matter jurisdiction as to the defendant McDowell County Board of Education. Apparently, the motion was not filed with the court. However, in a trial brief submitted to the court, defendants asserted that the court had no jurisdiction since the vehicle involved was a "school transportation service vehicle" and, as such, all tort claims involving the vehicle came under the exclusive jurisdiction of the Industrial Commission, pursuant to G.S. 143-300.1. On 15 February 1983, an order was entered stating the following:

> The Motion of Defendant McDowell County Board of Education that it be dismissed from this action is hereby allowed and this action is dismissed as to The McDowell County Board of Education.

Plaintiff appeals from the foregoing order dismissing the school board as a party defendant.

*Donald F. Coats, for plaintiff appellant.*

*Dameron and Burgin, by Charles E. Burgin, for defendant appellee, McDowell County Board of Education.*

JOHNSON, Judge.

The sole question for determination on this appeal is whether the trial court erred in dismissing the action as to the McDowell County Board of Education (hereafter the "Board"), a party defendant. The basis for the dismissal by the trial court was G.S. 143-300.1, which provides in substance that claims against county and city boards of education for accidents involving "school buses or school transportation service vehicles" shall be heard and determined by the North Carolina Industrial Commission under the state Tort Claims Act, G.S. 143-291 *et seq.* The record reveals that the plaintiff would otherwise be entitled to proceed against the Board in Superior Court pursuant to G.S. 115C-42, on the basis of the Board's waiver of governmental immunity by its act of obtaining liability insurance.[1]

G.S. 143-300.1 provides, in pertinent part, as follows:

(a) The North Carolina Industrial Commission shall have jurisdiction to hear and determine tort claims against any county board of education or any city board of education, which claims arise as a result of any alleged mechanical defects or other defects which may affect the safe operation of a public school bus or school transportation service vehicle resulting from an alleged negligent act of maintenance personnel or as a result of any alleged negligent act or omission of the driver of a public school bus or school transportation service vehicle when:

(1) The salary of that driver is paid or authorized to be paid from the State Public School Fund, and the driver is an em-

---

1. G.S. 115C-42, by its own terms, apparently does not apply to the type of claims which are covered by G.S. 143-300.1, for its proviso states as follows:

Provided, that this section shall not apply to claims for damages caused by the negligent acts or torts of public school bus, or school transportation service vehicle drivers, while driving school buses and school transportation service vehicles when the operation of such school buses and service vehicles is paid from the State Public School Fund.

ployee of the county or city administrative unit of which that board is the governing body, or

(2) The driver is an unpaid school bus driver trainee under the supervision of an authorized employee of the Department of Transportation, Division of Motor Vehicles, or an authorized employee of that board or a county or city administrative unit thereof, and which driver was at the time of the alleged negligent act or omission operating a public school bus or school transportation service vehicle in the course of his employment by or training for that administrative unit or board.

As a preliminary matter, we agree with defendant that except for guidance as to what a "school transportation service vehicle" is, the above-quoted statute clearly vests jurisdiction over claims against county boards of education for accidents involving school buses or school transportation service vehicles in the North Carolina Industrial Commission when the following factors are present:

(1) If there is an accident, and if the accident involved the operation of a public school bus or school transportation service vehicle, and

(2) If the accident resulted from the negligence of the driver of a public school bus or school transportation service vehicle, and

(3) If the salary of such driver is paid from the state public school funds, and

(4) If the driver is an employee of the county or city administrative unit, and

(5) If the driver was at the time of the alleged negligent act operating a school bus or a school transportation service vehicle in the course of his employment.

The narrow issue before us, whether the phrase "school transportation service vehicle" embraces a driver education vehicle, is one of first impression under G.S. 143-300.1. Plaintiff urges that the phrase "school transportation service vehicle" be construed narrowly and contextually; that is, to include only those vehicles which perform the service of transporting children to

and from school and related school activities. In other words, to include only "service vehicles" that are akin to "school buses" in function, if not form. Such a definition would, therefore, exclude driver education vehicles. Defendant, on the other hand, contends that the phrase "embraces all vehicles owned by a board of education other than school buses which serve a transportation need of the board of education when that need is mandated by the legislature." Further, that since driver education training is a mandated duty, driver-training automobiles come within the definition of "school transportation service vehicles."

As a general matter, the applicable statute is in derogation of sovereign immunity, therefore, it must be strictly construed and its terms must be strictly adhered to. *Teer Co. v. Highway Commission*, 265 N.C. 1, 143 S.E. 2d 247 (1965); *Withers v. Board of Education*, 32 N.C. App. 230, 231 S.E. 2d 276 (1977). Furthermore, the wording in the Tort Claims Act generally, and in G.S. 143-300.1 particularly, is clear and unambiguous. Therefore, the words used must be given their natural or ordinary meaning. *Alliance Co. v. State Hospital*, 241 N.C. 329, 85 S.E. 2d 386 (1955). The legislative intent and purpose in enacting the Act must be ascertained from the wording of the statute, and rule of liberal construction cannot be applied to enlarge its scope beyond the meaning of its plain and unambiguous terms. *Id.* Accordingly, defendant's overly broad definition of "school transportation service vehicle" must be rejected.

As originally enacted, G.S. 143-300.1 applied to claims involving public school bus drivers. In 1961, the provision was amended to include "school transportation service vehicles when the salary of such driver is paid from the State Nine Months School Fund." Session Laws, 1961, c. 1102, ss. 1-3. However, no definition of the phrase was provided. We conclude that the phrase includes vehicles which perform the service of transporting children to and from school and related school activities: including those vehicles which perform functionally like the traditional yellow "school bus," such as school activity buses or vans. In addition, the phrase may include service vehicles used in the maintenance of the aforesaid vehicles; vehicles such as a pickup or gas truck owned by the local boards of education for the purpose of servicing the school buses themselves. The intent of the legislature in amending the statute to include service vehicles as well as school

buses must have been primarily and simply to include those motor vehicles which are the functional equivalents of a school bus, but are not technically buses, such as vans, and also such service vehicles as are used in their maintenance. Certainly there is no indication in the statute itself that the legislature intended to include driver education vehicles under this provision, and to do so under the guise of statutory construction would, in reality, amount to an act of judicial legislation rather than interpretation.

Furthermore, although we reject defendant's broad definition of the disputed phrase, we note that even if it were to be adopted, the definition would not, by its own terms, cover a driver education vehicle because such a vehicle does not serve a *transportation need* of the board of education. Rather, such vehicles plainly serve the *educational purpose* of training high school students in the operation of motor vehicles. Therefore, they are more closely analogous in function to the table saws in a shop class than they are to the school buses which transport students to and from the school building.

Support for this reading of the questioned phrase may be found in G.S. Chap. 115C, Article 14, "Driver Education." G.S. 115C-215 mandates that a program of driver training and safety education courses in the public schools be organized and administered under the general supervision of the Superintendent of Public Instruction. G.S. 115C-216(a) requires, *inter alia,* local boards of education to provide, "as a part of the program of the public high schools in this state a course of training and instruction in the operation of motor vehicles and to make such courses available for all persons of provisional license age. . . ." Subsection (b) of that statute authorizes the local boards of education to include in the budget the expense necessary to install and maintain a driver education course "as an item of *instructional service.*" Clearly, the driver-training vehicle itself is a necessary component in the driver education courses mandated by G.S. 115C-215 and G.S. 115C-216, and must, therefore, be considered as a component of *school instructional service* rather than *school transportation service.* The mere fact that a driver education vehicle is a motor vehicle which ordinarily may serve a "transportation" function does not bring it within the phrase "school transportation service vehicle" as that phrase is used in G.S. 143-300.1.

Smith v. McDowell Co. Bd. of Education

The main thrust of that statute is directed toward accidents involving drivers of school buses while acting in the course of their employment, that is, in transporting children to and from school. As amended, the statute allows actions against local school boards to be brought before the Industrial Commission if an otherwise covered accident occurs, but involves another type of vehicle serving the school transportation function. Under G.S. 143-300.1, the extent of liability is limited to that provided under the Tort Claims Act. *See* G.S. 143-291 (amount of damages awarded may not exceed the sum of one hundred thousand dollars ($100,000) cumulatively to all claimants on account of injury and damage to any one person). In contrast, the defendant Board's governmental immunity is alleged to have been waived to the extent of its liability insurance coverage; to the sum of one million dollars ($1,000,000). Therefore, although it is evident that the McDowell County Board of Education would benefit from a broad interpretation of G.S. 143-300.1 in this case, other local boards of education which have not elected to waive their governmental immunity under G.S. 115C-42 would be subjected to liability for accident claims neither expressly nor impliedly covered by the phrase "school transportation service vehicle."

Therefore, we hold that a driver education vehicle is not a "school transportation service vehicle" as that phrase is used in G.S. 143-300.1. Accordingly, the trial court erred in dismissing plaintiff's tort action as to the defendant McDowell County Board of Education pursuant to G.S. 143-300.1 as that statute vesting jurisdiction in the Industrial Commission does not cover accidents involving a driver education vehicle which is being operated by a student driver under the supervision and control of a driver education instructor.

Reversed and remanded.

Judges WELLS and BECTON concur.