IRVING v. CHARLOTTE MECKLENBURG BD. OF EDUC.

[230 N.C. App. 265 (2013)]

TYKI SAKWAN IRVING, PLAINTIFF-APPELLANT
v.
CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, DEFENDANT-APPELLEE

No. COA12-1496

Filed 5 November 2013

**Tort Claims Act—jurisdiction—school activity bus accident**

 The Industrial Commission erred by ruling that it lacked jurisdiction over a Tort Claims Act case arising from an accident involving a school activity bus, and by granting defendant's motion for summary judgment. N.C.G.S. § 143-300.1 granted sole jurisdiction to the Commission to hear plaintiff's claim. To the extent that policies of defendant or the State Board conflicted with the General Statutes and appellate opinions of North Carolina interpreting these statutes, the Court of Appeals was bound by the statutory enactments and prior case law.

Appeal by Plaintiff from order entered 8 August 2012 by the North Carolina Industrial Commission. Heard in the Court of Appeals 13 August 2013.

*Osborne Law Firm, P.C., by Curtis C. Osborne, for Plaintiff-Appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Christina S. Hayes, for Defendant-Appellee.*

McGEE, Judge.

Randal Long ("Long"), the football coach for Providence High School ("the school"), was driving an activity bus ("the bus") owned by the Charlotte-Mecklenburg Board of Education ("Defendant"), on 5 October 2007, when the bus collided with the rear of a vehicle driven by Tyki Sakwan Irving ("Plaintiff"). At the time of the collision, Long was transporting the school's football team to a game with another high school. Plaintiff was injured and alleges her injuries were the result of Long's negligence.

Plaintiff filed a form NCIC-T-1, Claim for Damages Under Tort Claims Act, initiating this tort claims action with the North Carolina Industrial Commission ("the Commission") on 29 September 2010. Following

multiple filings not relevant to this appeal, the Commission decided Defendant's motion for summary judgment by order entered 8 August 2012. In that order, the Commission stated:

> The parties' disagreement primarily centers on whether the driver of the activity bus owned by [D]efendant in this case "was at the time of the alleged negligent act or omission operating a public school bus or school transportation service vehicle *in accordance with [N.C. Gen. Stat. §] 115C-242* in the course of his employment[.]" N.C. Gen. Stat. § 143-300.1 (2007) (emphasis added).

The Commission ruled that Long was not operating a public school bus or school transportation service vehicle in accordance with N.C.G.S. § 115C-242, because that statute did not

> include or encompass transporting students in an activity bus owned by a county board of education to an extracurricular activity of the sort involved in Plaintiff's claim, namely the transportation of a high school football team to and from a football game at another high school on a Friday evening.

For this reason, the Commission granted Defendant's motion for summary judgment, based upon its ruling that the accident did not fall within the requirements of N.C.G.S. § 143-300.1 and therefore the Commission lacked subject matter jurisdiction. Plaintiff appeals.

I.

Plaintiff argues on appeal that the Commission erred in ruling that it lacked jurisdiction over the claim and in granting Defendant's motion for summary judgment. We agree.

"Summary judgment is proper when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Review of summary judgment on appeal is *de novo*. The evidence must be evaluated in the light most favorable to the non-moving party." *Collier v. Bryant,* __ N.C. App. __, __, 719 S.E.2d 70, 75 (2011) (citation omitted). The Commission "shall have jurisdiction to hear and determine tort claims against any county board of education or any city board of education, which claims arise . . . as a result of any alleged negligent act or omission of the driver . . . of a public school bus or school transportation service vehicle when" certain criteria are met. N.C. Gen. Stat. § 143-300.1(a) (2011). If a negligent act by such a driver falls within the scope of the Tort Claims Act, the Commission has sole jurisdiction over

the matter. *Stein v. Asheville City Bd. of Educ.*, 168 N.C. App. 243, 250-251, 608 S.E.2d 80, 85-86 (2005), *reversed in part not affecting this citation*, 360 N.C. 321, 626 S.E.2d 263 (2006).

## II.

Resolution of this matter depends on whether, as required by N.C.G.S. § 143-300.1(a), (A) the activity bus operated by Long can be considered a "public school bus" or a "school transportation service vehicle" and, if so, (B) whether Long was operating the activity bus in accord with N.C. Gen. Stat. § 115C-242 (2011). In light of sometimes inconsistent statutes and case law related to this question, we conduct an extended analysis.

### A. "Public School Bus" or "School Transportation Service Vehicle"

The North Carolina State Board of Education (the State Board) formerly owned and operated school buses. *Turner v. Board of Education*, 250 N.C. 456, 463, 109 S.E.2d 211, 217 (1959). At that time, the State Board could be sued for torts involving school bus drivers serving local schools. *Id.* at 463, 109 S.E.2d at 216-17. Later, in the 1950's, the State Board transferred ownership of these buses to the local boards of education and, at that time, the General Assembly declared that the State Board would not be liable for negligent acts associated with the operation of these buses. *Id.* at 463-64, 109 S.E.2d at 217.

> The provision was made by reason of the fact that the State Board of Education had previously operated the busses, and upon the transfer of ownership and operation the State was disclaiming responsibility for negligent operations after the transfer. As a corollary to the Act withdrawing liability of the State Board of Education for negligent acts of school bus drivers, the General Assembly placed the financial responsibility for such act squarely on the county and city boards of education. G.S. 143-300.1. The section, effective July 1, 1955, amended the State Tort Claims Act by prescribing that claims against county and city boards for such injuries shall be heard by the North Carolina Industrial Commission under rules of liability and procedure as provided with respect to tort claims against the State Board of Education.

*Id.* at 464, 109 S.E.2d at 217. N.C.G.S. § 143-300.1 provided not only for tort claims act coverage for the negligence of drivers of "public school buses," but also for the negligence of drivers of public "school

transportation service vehicles." N.C.G.S. § 143-300.1(a). "School transportation service vehicles" are referred to as (1) "school transportation service vehicles" in N.C. Gen. Stat. § 115C-42 (2011), N.C. Gen. Stat. § 115C-255 (2011), and N.C.G.S. § 143-300.1, and as (2) "service vehicles" in N.C. Gen. Stat. § 115C-240 (2011) and N.C. Gen. Stat. § 115C-249 (2011).

By authority granted it by the General Assembly: "The State Board of Education shall promulgate rules and regulations for the operation of a public school transportation system." N.C.G.S. § 115C-240(a) (2011). Pursuant to the State Board Policy Manual: "Local Education Agencies (LEAs) [(local boards of education)] shall adopt and keep on file in the office of the superintendent rules, regulations and policies to assure the safe, orderly and efficient operation of school buses, including: (1) the use of school buses under G.S. 115C-242(5)[.]" 16 N.C. Admin. Code 6B.0103 (2011). N.C.G.S. § 115C-242(5) states in relevant part: "Local boards of education, under rules adopted by the State Board of Education, may permit the use and operation of school buses for the transportation of pupils and instructional personnel as the board deems necessary to serve the instructional programs of the schools." N.C. Gen. Stat. § 115C-242(5) (2011). Defendant's policy states:

> EEAFA Extra Curricular Activity Buses Field Trips — Special Events Transportation
>
> Special transportation by school buses or school activity vehicles will be provided for appropriate educational experiences in compliance with state law.
>
> Activity buses and vans will be provided for activities and functions sponsored by the school system. These vehicles shall be maintained by the Transportation Department as provided for in the state law. Insurance for school activity vehicles will be provided for under the Board of Education policy.
>
> Legal Reference: G.S. 115C-242, G.S. 115C-248.

Charlotte-Mecklenburg Sch. Bd. of Educ., *Policy Code: EEAFA*, Charlotte-Mecklenburg School Board Policies, (http://policy.microscribepub.com/cgibin/om_isapi.dll?clientID=307134909&depth=2&infobase=charmeck.nfo&record={5A2}&softpage=PL_frame) (last revised May 27, 1986).

Defendant's "Regulation Code: EEAFA-R Bus Transportation for Special Occasions and Activity Buses/Vans" states in relevant part:

IRVING v. CHARLOTTE MECKLENBURG BD. OF EDUC.

[230 N.C. App. 265 (2013)]

Bus Transportation for Special Occasions

2. Special transportation shall provide for the transportation of students, teachers, and approved supervisory personnel only to activities, performances, and events directly related to the school curriculum of the Charlotte Mecklenburg Schools.

3. Regular school buses shall not be used for transportation to destinations outside of Mecklenburg County, except for wheelchair lift equipped buses which may travel into an adjacent county but not out of state.

4. Drivers used for special transportation must have a valid commercial driver's license with a school bus or passenger endorsement.

. . . .

6. It is the transportation specialist's responsibility to obtain approved, qualified drivers for field trips.

. . . .

Activity Buses/Vans

1. All activity bus/van drivers must hold a North Carolina Class A or Class B operator's license or a school bus license.

2. Activity buses/vans may be used to transport pupils to and from athletic events and for other school sponsored activities.

3. The maximum permissible speed for an activity bus is 45 miles per hour. All other traffic laws governing the operation of public school buses apply to activity buses. The maximum permissible speed for an activity van is 55 miles per hour.

. . . .

Legal Reference: G.S. 115C-242(5).

Charlotte-Mecklenburg Sch. Bd. of Educ., *Regulation Code: EEAFA-R*, Charlotte-Mecklenburg School Board Policies, (http://policy.microscribepub.com/cgibin/om_isapi.dll?clientID=307135360&depth=2&info

base=charmeck.nfo&record={5AB}&softpage=PL_frame) (last revised June 9, 1986).

N.C.G.S. § 115C-242(5), the "Legal Reference" given in support of the above policy, states in relevant part:

> Local boards of education, under rules adopted by the State Board of Education, may permit the use and operation of school buses for the transportation of pupils and instructional personnel as the board deems necessary to serve the instructional programs of the schools. . . . . On any such trip, a city or county-owned school bus shall not be taken out of the State.

> If State funds are inadequate to pay for the transportation approved by the local board of education, local funds may be used for these purposes. Local boards of education shall determine that funds are available to such boards for the transportation of children to and from the school to which they are assigned for the entire school year before authorizing the use and operation of school buses for other services deemed necessary to serve the instructional program of the schools.

N.C.G.S. § 115C-242(5).

Defendant's "Policy Code: IJOA Field Trips" states:

> Field trips of significant educational value will be encouraged. All trips are to be an extension of the classroom and an integral part of the educational program. . . . .

> In accordance with State law, the Board of Education authorizes and supports school bus and/or school activity bus transportation services for schools. The use and operation of the buses for the transportation of students and instructional personnel is authorized for activities the State, the Board of Education, or the principal of the school has deemed necessary to serve the instructional programs of the schools. These special activities include:

> . . . .

> • Approved athletic events

> . . . .

Regular school buses may be used to support educational field trips only during normal school hours to locations within the boundaries of Mecklenburg County and in support of after-school extracurricular activities at the middle schools and high schools. . . . .

Activity buses and vans will be provided for activities and functions sponsored by the school system. These buses will transport students to and from athletic events, other school sponsored extracurricular activities and field trips where a school bus is not authorized or available.

. . . . All other traffic laws governing the operation of a school bus are applicable.

Charlotte-Mecklenburg Sch. Bd. of Educ., *Policy Code: IJOA*, Charlotte-Mecklenburg School Board Policies, (http://policy.microscribepub.com/cgibin/om_isapi.dll?clientID=307135360&depth=2&info base=charmeck.nfo&record={10E7}&softpage=PL_frame) (last revised January 27, 1998).

Plaintiff and Defendant agree that Long was driving a school activity bus at the time of the collision. N.C.G.S. § 143-300.1(a) states in relevant part:

The North Carolina Industrial Commission shall have jurisdiction to hear and determine tort claims against any county board of education or any city board of education, which claims arise . . . as a result of any alleged negligent act or omission of the driver . . . of a public school bus or school transportation service vehicle when:

(1) The driver is an employee of the county or city administrative unit of which that board is the governing body, and the driver is paid or authorized to be paid by that administrative unit,

. . . .

and which driver was at the time of the alleged negligent act or omission operating a public school bus or school transportation service vehicle in accordance with G.S. 115C-242 in the course of his employment by or training for that administrative unit or board[.]

N.C.G.S. § 143-300.1(a).

This Court stated in *Smith v. McDowell Co. Bd. of Education*, 68 N.C. App. 541, 316 S.E.2d 108 (1984) (holding that a driver education vehicle is not a "school transportation service vehicle" pursuant to N.C.G.S. § 143-300.1) that:

> [N.C.G.S. § 143-300.1] clearly vests jurisdiction over claims against county boards of education for accidents involving school buses or school transportation service vehicles in the North Carolina Industrial Commission when the following factors are present:
>
> (1) If there is an accident, and if the accident involved the operation of a public school bus or school transportation service vehicle, and
>
> (2) If the accident resulted from the negligence of the driver of a public school bus or school transportation service vehicle, and
>
> (3) If the salary of such driver is paid from the state public school funds, and
>
> (4) If the driver is an employee of the county or city administrative unit, and
>
> (5) If the driver was at the time of the alleged negligent act operating a school bus or a school transportation service vehicle in the course of his employment.

*Id.* at 544, 316 S.E.2d at 110-11. The General Assembly, in 1998 and after *Smith* was filed, added the requirement that a school bus or school transportation service vehicle must have been operated in accordance with N.C.G.S. § 115C-242 in order for the Tort Claims Act to apply. The "definitions" sections of neither Article 31 of Chapter 143, *Tort Claims Against State Departments and Agencies,* nor Chapter 115C, *Elementary and Secondary Education,* includes definitions of "school bus," "school activity bus," or "school transportation service vehicle."

We must decide whether a school activity bus is considered a "school bus" or a "school transportation service vehicle" pursuant to N.C.G.S. § 143-300.1. The only definition of "school bus" in Chapter 115C is found in N.C. Gen. Stat. § 115C-249.1 (2011): "Purchase of tires for school buses; repair or refurbishment of tires for school buses[,]" which states:

> (a) Definitions. – The following terms apply in this section:
>
> . . . .

(2)  School bus. – A vehicle as defined in G.S. 20-4.01(27) d3. and G.S. 20-4.01(27)d4. that is owned, rented, or leased by a local board of education.

N.C.G.S. § 115C-249.1(a)(2).

N.C. Gen. Stat. §§ 20-4.01(27)d3. and d4. state as follows:

d3.  School activity bus. – A vehicle, generally painted a different color from a school bus, whose primary purpose is to transport school students and others to or from a place for participation in an event other than regular classroom work. The term includes a public, private, or parochial vehicle that meets this description.

d4.  School bus. – A vehicle whose primary purpose is to transport school students over an established route to and from school for the regularly scheduled school day, that is equipped with alternately flashing red lights on the front and rear and a mechanical stop signal, that is painted primarily yellow below the roofline, and that bears the plainly visible words "School Bus" on the front and rear. The term includes a public, private, or parochial vehicle that meets this description.

N.C. Gen. Stat. § 20-4.01(27)d3. and d4. (2011). Therefore, for the purposes of N.C.G.S. § 115C-249.1: "Purchase of tires for school buses; repair or refurbishment of tires for school buses[,]" the term "school bus" includes "school activity buses." However, pursuant to N.C.G.S. § 20-4.01, the definitions in Chapter 20, *Motor Vehicles*, only apply to Chapter 20. N.C.G.S. § 20-4.01 ("the following definitions apply throughout this chapter"). Of course, if definitions from Chapter 20 are specifically adopted in a section of another chapter, as was done in N.C.G.S. § 115C-249.1(a)(2), they control for that section as well.

Chapter 115C does include an implied definition of "activity bus."

The several local boards of education in the State are hereby authorized and empowered to take title to *school buses purchased with local or community funds for the purpose of transporting pupils to and from athletic events and for other local school activity purposes, and commonly referred to as activity buses.*

Each local board of education that operates activity buses shall adopt a policy relative to the proper use of the

vehicles. The policy shall permit the use of these buses for travel to athletic events during the regular season and play-offs and for travel to other school-sponsored activities.

The provisions of G.S. 115C-42 shall be fully applicable to the ownership and operation of such activity school buses. Activity buses may also be used as provided in G.S. 115C-243.

N.C. Gen. Stat. § 115C-247 (2011) (emphasis added). N.C. Gen. Stat. § 115C-243 involves "the use of school buses to provide transportation for the elderly." N.C. Gen. Stat. § 115C-243(a) (2011). Therefore, N.C.G.S. § 115C-243 is another section that includes "activity buses" within the term "school buses," as N.C.G.S. § 115C-243 only references "school buses" and does not mention "activity buses." *Id.* ("[a]ny local board of education may enter into agreements . . . to provide for the use of *school buses* to provide transportation for the elderly") (emphasis added).

The General Statutes do not clarify whether an activity bus is considered a "school bus," a "school transportation service vehicle," or a completely separate class. Some portions of the statutes appear to treat activity buses as a subset of "school buses," which is sensible considering their comparative sizes and functions. According to the State Board's policy, "Each local board of education is authorized to own and operate a school bus fleet under Statute 115C-239. These fleets include school buses for basic to-and-from-school transportation and the service vehicles required for maintenance of those buses and delivery of fuel to those buses." N.C. Dept. Pub. Instruction, *NC BUS FLEET: North Carolina School Transportation Fleet Manual,* N.C. Dept. Pub. Instruction School Support Division, Transportation Services, p. 8,(http://www.ncbussafety. org/Manuals/NCBUSFLEETManualExcerptVehicles03March2011.pdf) (March 3, 2011), *adopted by* N.C. State Bd. Of Educ., *TCS-H-005, Policy regarding Preventive Maintenance and Vehicle Replacement Manual,* N.C. State Bd. Of Educ. Policy Manual, (http://sbepolicy.dpi.state.nc.us/) (last revised August 4, 2011). The State Board includes the following as service vehicles: pickup trucks, cargo vans, fuel trucks, wreckers, tire trucks, lube trucks and "other vehicles used for the maintenance of the state's school bus fleet." *Id.* at 10-11.

Like activity buses, regular school buses can be purchased with local funds, N.C.G.S. § 115C-249(a) and (b), and regular school buses may be used in certain circumstances for field trips and other special activities pursuant to N.C.G.S. § 115C-242(5). Activity buses are not operated with funds from the State Public School Fund. N.C.G.S. §§ 115C-240(f)

and 248(d). When regular school buses are operated for extracurricular purposes, they may be funded by local funds. *See* N.C. Gen. Stat. § 115C-47(24) (2011); N.C.G.S. § 115C-255.

Therefore, for the purpose of serving instructional programs of a school, it is possible that a regular school bus is purchased and operated using only local funds. Were someone to be injured by the operation of such a bus due to the negligence of its driver, sole jurisdiction over any ensuing action would lie with the Commission pursuant to the Tort Claims Act, as set forth in N.C.G.S. § 143-300.1. According to Defendant's own policy, instructional programs include athletic events. Charlotte-Mecklenburg Sch. Bd. of Educ., *Policy Code: IJOA,* Charlotte-Mecklenburg School Board Policies, (http://policy.microscribepub.com/cgibin/om_isapi.dll?clientID=307135360&depth=2&infobase=charm eck.nfo&record={10E7}&softpage=PL_frame) (last revised January 27, 1998). There is little to distinguish such a hypothetical scenario, where a regular school bus is used for extracurricular instructional activities, from the facts of the present case, other than the designation of the bus as a "school bus" rather than an "activity bus."

The plain language of N.C.G.S. § 143-300.1, incorporating N.C.G.S. § 115C-242, does not clearly include or exclude "school activity buses" from coverage under the Tort Claims Act. If activity buses are intended to be included by our General Assembly in N.C.G.S. § 143-300.1, they might more logically fit as a subsection of "public school buses" and not "school transportation service vehicles." However, this Court has previously held otherwise. In *Smith,* this Court held:

> We conclude that the phrase [school transportation service vehicle] includes vehicles which perform the service of transporting children to and from school and related school activities: including those vehicles which perform functionally like the traditional yellow "school bus," such as *school activity buses* or vans. In addition, the phrase may include service vehicles used in the maintenance of the aforesaid vehicles; vehicles such as a pickup or gas truck owned by the local boards of education for the purpose of servicing the school buses themselves. The intent of the legislature in amending the statute to include service vehicles as well as school buses must have been primarily and simply to include those motor vehicles which are the functional equivalents of a school bus, but are not technically buses, such as vans, and also such service vehicles as are used in their maintenance.

*Smith,* 68 N.C. App. at 545-46, 316 S.E.2d at 111 (emphasis added). *Smith* represents the only opinion of our appellate courts interpreting the terms "school bus" and "school transportation service vehicle" as used in N.C.G.S. § 143-300.1. *Smith* emphasized a distinction between vehicles that "serve a transportation need of the board of education[,]" and those that do not, with the former being covered by N.C.G.S. § 143-300.1. *Smith,* 68 N.C. App. at 546, 316 S.E.2d at 111. Though our General Assembly has amended N.C.G.S. § 143-300.1 since *Smith* was filed, and has had the opportunity to clarify or redefine the term "school transportation service vehicle," it has not done so. Therefore, we are bound by this definition. *In re Civil Penalty,* 324 N.C. 373, 379 S.E.2d 30 (1989). Thus, the activity bus driven by Long was a "school transportation service vehicle" for the purposes of N.C.G.S. § 143-300.1. *Smith,* 68 N.C. App. at 545, 316 S.E.2d at 111 ("[w]e conclude that the phrase [school transportation service vehicle] includes . . . those vehicles which perform functionally like the traditional yellow 'school bus,' such as school activity buses"). Until the General Assembly provides appropriate definitions, or other guidance, or our Supreme Court addresses the issue decided in *Smith,* we are constrained to reach this result.

## B. *Activity Bus Operated in Accord with N.C.G.S. § 115C-242*

The uncontested facts show that Long, a teacher and the head football coach at Providence High School, was driving "a Charlotte-Mecklenburg Board of Education-owned white and blue activity bus[,]" while transporting student football players from Providence High School to another high school to participate in a football game. When we apply the uncontested facts, and the alleged negligence of Long, to the requirements of N.C.G.S. § 143-300.1, the only remaining issue to determine in deciding whether the Commission had exclusive jurisdiction over this action is whether Long was, at the time of the accident, operating the "school transportation service vehicle in accordance with G.S. 115C-242[.]" N.C.G.S. § 143-300.1(a). As noted above, the language "in accordance with G.S. 115C-242" was added in 1998. N.C. Gen. Stat. § 115C-242 states in relevant part:

> Public *school buses* may be used for the following purposes only, and it shall be the duty of the superintendent of the school of each local school administrative unit to supervise the use of all school buses operated by such local school administrative unit so as to assure and require compliance with this section:

> (1) A school bus may be used for the transportation of pupils enrolled in and employees in the operation

of the school to which such bus is assigned by the superintendent of the local school administrative unit. Except as otherwise herein provided, such transportation shall be limited to transportation to and from such school for the regularly organized school day, *and from and to the points designated by the principal of the school to which such bus is assigned, for the receiving and discharging of passengers.*

. . . .

(5) Local boards of education, under rules adopted by the State Board of Education, may permit the use and operation of school buses for the transportation of pupils and instructional personnel as the board deems necessary to serve the *instructional programs* of the schools.

N.C. Gen. Stat. § 115C-242 (2011) (emphasis added).

Defendant's own policies, enacted pursuant to the policies of the State Board, authorized by N.C.G.S. § 115C-240, place the operation of the activity bus by Long within the restrictions of N.C.G.S. § 115C-242. "The use and operation of the buses [including activity buses] for the transportation of students and instructional personnel is authorized for activities . . . the principal of the school has deemed necessary to serve the instructional programs of the schools. These special activities include: . . . . Approved athletic events." Charlotte-Mecklenburg Sch. Bd. of Educ., *Policy Code: IJOA,* Charlotte-Mecklenburg School Board Policies (http://policy.microscribepub.com/cgibin/om_isapi.dll?clientID=307135 360&depth=2&infobase=charmeck.nfo&record={10E7}&softpage=PL_ frame) (last revised January 27, 1998).

Defendant's policy thus allows activity buses to be directed by the principal, a requirement of N.C.G.S. § 115C-242(1), and classifies athletic events as instructional programs, a requirement of N.C.G.S. § 115C-242(5). Furthermore, the General Assembly, in a statute prohibiting certain interference with free enterprise, clearly indicates that school activity buses are to be operated pursuant to the provisions of N.C.G.S. § 115C-242. N.C. Gen. Stat. § 66-58 states that no unit of State government is to provide transportation services that compete with private enterprise. N.C. Gen. Stat. § 66-58(a) (2011). N.C.G.S. § 66-58(c) then states that certain public transportation activities are exempt from this prohibition, including: "The use of a public school bus *or public school activity bus for a purpose allowed under G.S. 115C-242*[.]" N.C.G.S.

§ 66-58(c)(9a) (emphasis added). As far as we can determine, this is the only statute clearly suggesting that activity buses perform duties covered under N.C.G.S. § 115C-242, the plain language of which only references "public school buses."

We note that the language of N.C.G.S. § 115C-242 references only "public school buses." "School transportation service vehicles" are nowhere mentioned in the statute – nor are "school activity buses." Further, not all "school transportation service vehicles," as defined by Smith, are contemplated by N.C.G.S. § 115C-242. Most obviously, N.C.G.S. § 115C-242 is limited to vehicles that transport passengers or "for emergency management purposes in any state of disaster or local state of emergency declared under Chapter 166A of the General Statutes." N.C.G.S. § 115C-242. The Smith definition of "school transportation service vehicles" includes service vehicles used solely for the maintenance of school buses. Smith, 68 N.C. App. at 546, 316 S.E.2d at 111.

Considering the totality of the statutory and policy evidence, it is clear that "school transportation service vehicles" include vehicles purchased to service the public school bus fleet. These vehicles are not used for the transportation of passengers and, therefore, do not fit within the requirements of N.C.G.S. § 115C-242. It is not possible for these school transportation service vehicles to be operated "in accordance with G.S. 115C-242." The 1998 inclusion of the language "in accordance with G.S. 115C-242" to N.C.G.S. § 143-300.1 created an inconsistency, in that full effect cannot be given to the plain language of both sections. N.C.G.S. § 115C-242 is irreconcilable with N.C.G.S. § 143-300.1 if the term "public school bus" in N.C.G.S. § 115C-242 is read narrowly.

For the purpose of resolving the statutory difficulty in the issue before us, we hold that, by incorporating "in accordance with G.S. 115C-242" in N.C.G.S. § 143-300.1, the term "public school buses" in N.C.G.S. § 115C-242 refers to "school transportation service vehicles" as well.

The activity bus, being a school transportation service vehicle under Smith, 68 N.C. App. at 545, 316 S.E.2d at 111 ("[w]e conclude that the phrase [school transportation service vehicle] includes . . . those vehicles which perform functionally like the traditional yellow 'school bus,' such as school activity buses"), driven by Long, a paid employee of Defendant, which was being operated in the course of Long's employment with Defendant, was involved in an accident allegedly caused by Long's negligence. The activity bus was operating at the direction of the

principal of the school by which Long was employed, and the activity bus was being operated to serve the "instructional programs of the school." N.C.G.S. § 115C-242(1) and (5). Therefore, N.C.G.S. § 143-300.1 granted sole jurisdiction to the Commission to hear Plaintiff's claim. We reverse and remand for further proceedings in accordance with this opinion.

We note we are aware that Defendant's policies state: "Activity buses and vans are not covered by the State Tort Claims Act. All activity buses and vans will be covered with liability insurance under the Board of Education policy." Charlotte-Mecklenburg Sch. Bd. of Educ., *Regulation Code: EEAFA-R*, Charlotte-Mecklenburg School Board Policies (http://policy.microscribepub.com/cgibin/om_isapi.dll?clientID=307135360&depth=2&infobase=charmeck.nfo&record={5AB}&softpage=PL_frame) (last revised June 9, 1986). According to Defendant's policies, activity buses are not covered by the Tort Claims Act, but local school boards are required to purchase liability insurance to cover activity buses. In this matter, Defendant is only authorized to act within the authority granted it by the State Board, and the State Board is only authorized to act within the authority granted by the General Assembly. N.C.G.S. §§ 115C-239 and 240. With respect to this issue, to the extent that policies of the Defendant or the State Board conflict with the General Statutes and appellate opinions of North Carolina interpreting these statutes, we are bound by the statutory enactments of the General Assembly and by prior case law of our Courts.

Reversed and remanded.

Judges STEELMAN and ERVIN concur.