IN THE MATTER OF: KENNETH ELDIMOR ALLISON

No. COA11-245

(Filed 4 October 2011)

**Mental Illness—involuntary commitment—improper use of local form instead of standard Administrative Office of Courts form—insufficient findings of fact**

The trial court erred by committing defendant to involuntary inpatient commitment for a period not to exceed 10 days. The trial court improperly used a locally modified involuntary commitment order form instead of the standard Administrative Office of the Courts form. Further, the trial court failed to make any written findings of fact or incorporate by reference either physician's report. The case was remanded.

Appeal by respondent from involuntary commitment order entered 9 September 2010 by Judge Marvin P. Pope, Jr., in Buncombe County District Court. Heard in the Court of Appeals 31 August 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Charlene Richardson, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defenders Mary Cook and Kristen L. Todd, for respondent-appellant.*

McCULLOUGH, Judge.

Kenneth Eldimor Allison ("respondent") appeals from an order committing him to involuntary inpatient commitment for a period not to exceed 10 days. For reasons discussed herein, we reverse.

### I. Background

Following a standoff with the Asheville Police Department on 31 August 2010, Mission Hospital admitted respondent pursuant to an affidavit by Officer Adam T. Roach and an involuntary commitment order signed by a Buncombe County magistrate. The affidavit alleged that, during the standoff respondent barricaded himself in his car and asked police to shoot him. The affidavit also mentioned that prior to being stopped, respondent ran through stop signs and red lights in downtown Asheville while throwing clothing and items from his car. Attached to the affidavit was a news article regarding a previous

standoff on 19 August 2010, between respondent and the Beaufort County Sheriff's Department in Hilton Head Island, South Carolina.

On 1 September 2010, Dr. Stacia Moore completed an initial evaluation of respondent and determined that respondent was mentally ill and dangerous to himself and others. Dr. Moore recommended that respondent take part in 7-12 days of inpatient treatment. Dr. Moore based her recommendation on her opinion that respondent suffered from paranoid and delusional thoughts and that he was not a reliable reporter. Dr. Moore also noted that respondent believed the police were out to get him because he knew about their dealings and collusion with crack dealers. She further opined that respondent was unable to make a reliable contract for his safety.

On 2 September 2010, Dr. Micah Krempasky evaluated respondent at Mission Hospital. Subsequently, on 6 September 2010, a hearing was held to determine if respondent should be involuntarily committed. No one appeared on behalf of the State, but the trial court questioned Dr. Krempasky regarding her evaluation of defendant. Dr. Krempasky testified that respondent displayed symptoms of mania consistent with bipolar disorder. Dr. Krempasky further testified that respondent was hyper-verbal and unable to maintain appropriate social boundaries and was taking his medicine, but had limited insight as to whether the medicine was helping him. According to Dr. Krempasky, respondent was "unable to handle the boundaries of his unit" because he took a pair of scissors from the arts and crafts room, and hid them in his room. He also took ink pens, which are considered "contraband," and hid them in his boot. Respondent did this a second time after being told they were not allowed. Respondent did not admit to having, and refused to relinquish, the contraband, requiring the staff to conduct a room search. Dr. Krempasky noted respondent did not threaten anyone, but· had "possess[ed] the contraband in a manner that [was] [not] forthright." On the day before his hearing, the hospital placed a sitter with respondent for his safety. Dr. Krempasky believed respondent was a danger to himself and others and based on his slow response to medication recommended that he continue inpatient treatment for another 10 days.

At his hearing, respondent testified that he had met with Dr. Krempasky three to four times and that Dr. Krempasky had diagnosed him as manic depressive. He noted that the scissors he took were not sharp and were used to cut his fingernails. He claimed that he returned them to the person in charge of arts and crafts when he was through with them. Respondent did not think he needed inpatient

**IN RE ALLISON**

[216 N.C. App. 297 (2011)]

treatment as he was taking his medication and was willing to do out-patient treatment. He claimed that he did not get out of his car during the police standoff because the police were not following standard operating procedure and he was scared of being shot.

Respondent's attorney argued that respondent should not be committed because he was not a danger to himself or to others. He noted that there was no indication that respondent used the scissors to harm himself or others. He also contended that respondent was able to support and care for himself and that there was no indication that his behavior or mental illness were leading to severe debilitation.

The trial court filled out the locally modified form involuntary commitment order by checking a box indicating that by clear, cogent, and convincing evidence it found that respondent met the require-ments for further inpatient treatment. The form further noted that respondent was mentally ill and a danger to himself and others. The trial court committed respondent to inpatient treatment for 10 days. Respondent appeals.

## II. Analysis

Respondent first contends that the trial court erred in ordering him to involuntary commitment when the commitment order was not supported by sufficient findings of fact. We agree.

First, we note that even though the term for respondent's invol-untary commitment has passed, " 'a prior discharge will not render questions challenging the involuntary commitment proceeding moot.' " *In re Booker*, 193 N.C. App. 433, 436, 667 S.E.2d 302, 304 (2008) (quoting *In re Mackie*, 36 N.C. App. 638, 639, 244 S.E.2d 450, 451 (1978)). "When the challenged order may form the basis for future commitment or may cause other collateral legal consequences for the respondent, an appeal of that order is not moot." *In re Webber*, 201 N.C. App. 212, 217, 689 S.E.2d 468, 472-73 (2009).

In reviewing a commitment order we

> determine whether there was *any* competent evidence to sup-port the "facts" recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the "facts" recorded in the order.

*Booker*, 193 N.C. App. at 436, 667 S.E.2d at 304 (quoting *In re Collins*, 49 N.C. App. 243, 246, 271 S.E.2d 72, 74 (1980)). "To support an inpa-

tient commitment order, the court shall find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self, . . . or dangerous to others . . . . The court shall record the facts that support its findings." N.C. Gen. Stat. § 122C-268(j) (2009). Further, it is mandatory that the trial court record the facts which support its findings. *In re Koyi*, 34 N.C. App. 320, 321, 238 S.E.2d 153, 154 (1977).

The trial court used a locally modified form involuntary commitment order and in making its findings of fact checked the box stating, "Based on the evidence presented, the Court by clear, cogent and convincing evidence finds these other facts: Court Finds That The Respondent Meets Criteria For Further Inpatient Commitment." The trial court did not make any written findings of fact or incorporate by reference either physician's report. Had the trial court utilized the standard Administrative Office of the Courts form involuntary commitment order and entered the findings of fact required by that form, this remand may not have been necessary as the evidence tends to show that respondent is likely mentally ill and potentially dangerous to himself and to others. But, the trial court's checking of a box on its locally modified form is insufficient to support this determination. Furthermore, we may not determine whether the evidence was sufficient because the trial court failed to make any findings of fact for us to review. *See Booker*, 193 N.C. App. 433, 667 S.E.2d 302. Had the trial court made some written findings of fact or incorporated by reference either physician's report, we would have something to review. However, we must reverse and remand for appropriate findings of fact, and this being a dispositive issue, we need not address respondent's other assignment of error.

### III. Conclusion

Based on the foregoing, we reverse and remand.

Reversed and remanded.

Judges HUNTER (Robert C.) and STEELMAN concur.