DAVIS, Judge.
 

 *660
 

 *467
 
 In this appeal from an action brought under North Carolina's Tort Claims Act, we consider the scope of the Industrial Commission's jurisdiction over negligence claims related to the operation of school buses. The Wake County Board of Education (the "Board") appeals from an order entered by the Commission denying their motion to dismiss various claims arising from the death of Maria J. Fernandez Jimenez, a 14-year-old girl who was struck by an oncoming vehicle while crossing the street to board her school bus.
 

 In its 20 January 2017 order, the Industrial Commission concluded that it possessed jurisdiction under the Tort Claims Act to hear not only (1) the plaintiffs' claims for negligence on the part of the school bus driver and maintenance personnel but also (2) their claims against various administrators within the Wake County Public School System alleging negligence in the development and design of school bus routes as well as in making various hiring, training, and staffing decisions. Because we conclude that the Industrial Commission lacks jurisdiction over this latter category of claims, we reverse the Commission's 20 January 2017 order and remand for further proceedings.
 

 Factual and Procedural Background
 

 On 25 March 2013, Maria lived with her parents and her brother Eduardo in Garner, North Carolina. Their home was located on North Carolina Highway 50, a divided two-lane road with a posted speed limit of 55 miles per hour. Maria and Eduardo both attended Garner Magnet High School, a Wake County public school. The two siblings were transported to and from school each day on a school bus.
 

 The bus stop for Maria was located across the street from her home and required her to cross Highway 50 prior to boarding the bus. Upon picking up Maria and Eduardo, the school bus would then travel southbound on Highway 50 for about a quarter of a mile before turning around and passing directly in front of their house while traveling northbound.
 

 *468
 
 On 25 March 2013, Gloria Smith was the school bus driver assigned to Maria's route. That morning, Smith stopped at the designated school bus stop across from Maria's house at approximately 6:32 a.m. Maria began crossing the street as Smith stopped the school bus. Around the same time, a vehicle driving along Highway 50 at a speed of approximately 50 miles per hour failed to stop for the school bus and fatally struck Maria as she was crossing the road.
 

 Pursuant to
 
 N.C. Gen. Stat. § 143-300.1
 
 , several of Maria's family members and her estate brought an action under the Tort Claims Act in the Industrial Commission against the Board. In accordance with
 
 N.C. Gen. Stat. § 143-297
 
 , they filed in conjunction with their complaint affidavits naming various Board employees whose alleged negligent acts formed the basis for their claims against the Board. In addition to Smith, the individuals listed in the affidavits as having allegedly committed negligent acts and omissions contributing to Maria's death included Anthony Tata, Superintendent of the Wake County Public School System ("WCPSS"); Stephen Gainey, Interim Superintendent of WCPSS; Drew Cook, Principal of Garner Magnet High School; Donald Haydon, Jr.,
 
 *661
 
 Chief Facilities and Operations Officer of WCPSS; Robert E. Snidemiller, Jr., Senior Director of Transportation for WCPSS; and unnamed maintenance personnel employed to maintain WCPSS school buses.
 

 With regard to Smith, Plaintiffs asserted that she was negligent in (1) failing to report to her supervisor that the assigned bus stop was dangerous and that a safer alternate stop existed; (2) instructing Maria and Eduardo to cross the street prior to her arrival at the bus stop; (3) failing to activate her flashers upon arriving at the bus stop; (4) failing to warn Maria of the oncoming vehicle that struck her; and (5) failing to conduct a prior inspection of the bus she was operating. Plaintiffs further alleged that unnamed maintenance workers were negligent in failing to ensure regular maintenance, inspection, and repair of the bus being operated by Smith, including its warning lights, signs, and safety signals.
 

 With respect to the WCPSS administrators named in the affidavits, Plaintiffs alleged that they had been negligent regarding (1) the development and design of the bus route and bus stop to which Maria was assigned; (2) the organization and staffing of the WCPSS transportation department; (3) the failure to ensure the proper working order of school buses and their warning systems; (4) the failure to sufficiently instruct and train school bus drivers; (5) the failure to adequately instruct Maria's family members regarding the safest
 
 *469
 
 way in which to reach their assigned bus stop; and (6) the failure to ensure a safe means for Maria to board the school bus.
 
 [2]
 

 On 1 May 2015, the Board filed a motion to dismiss Plaintiffs' administrative negligence claims pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules of Civil Procedure on the ground that "a tort claim cannot be filed in the North Carolina Industrial Commission against individuals who are not the driver, transportation safety assistant, or monitor of a public school bus." The Board did not move to dismiss the negligence claims premised upon the conduct of Smith or the unnamed maintenance personnel. On 18 May 2015, Deputy Commissioner J. Brad Donovan entered an order granting the Board's motion to dismiss, stating in pertinent part as follows:
 

 In the instant case, plaintiffs allege sufficient facts regarding negligence on the part of the bus driver to survive a motion to dismiss these claims. In fact, [the Board] has not moved to dismiss any more than the claims of negligent route planning and design. Accordingly, the ruling of the undersigned allowing [the Board's] Motion to Dismiss is limited to the alleged negligence on the part of members of the school board in the development, design, establishment, implementation, designation and assignment of routes and school bus stops and instruction, training and education of bus drivers and others.
 

 Plaintiff appealed the deputy commissioner's decision to the Full Commission. On 20 January 2017, the Full Commission issued an order vacating Deputy Commissioner Donovan's order and denying the Board's motion to dismiss. The Board filed a timely notice of appeal to this Court.
 

 Analysis
 

 The Board's sole argument on appeal is that the Commission erred in denying its motion to dismiss Plaintiffs' administrative negligence claims. It contends that the Industrial Commission possesses jurisdiction under the Tort Claims Act
 
 only
 
 for claims arising from the negligence of school bus drivers, bus monitors, transportation safety assistants, and maintenance personnel.
 

 *470
 

 I. Appellate Jurisdiction
 

 As an initial matter, we must determine whether this Court possesses jurisdiction over the Board's interlocutory appeal. The Board's appeal is based on the denial of their motions under Rules 12(b)(1) and (2) in which they asserted the lack of both personal jurisdiction and subject matter jurisdiction with respect to the administrative negligence claims. In this appeal, the Rule 12(b)(1) and Rule 12(b)(2) motions raise a common question-that is, whether the Board is subject to
 
 *662
 
 suit in the Industrial Commission with regard to Plaintiffs' administrative negligence claims.
 

 It is well settled that "[a] county or city board of education is a governmental agency, and therefore is not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority."
 
 Beatty v. Charlotte-Mecklenburg Bd. of Educ.
 
 ,
 
 99 N.C. App. 753
 
 , 755,
 
 394 S.E.2d 242
 
 , 244 (1990) (citation omitted),
 
 disc. review improvidently allowed
 
 ,
 
 329 N.C. 691
 
 ,
 
 406 S.E.2d 579
 
 (1991). "According to well-established North Carolina law, governmental immunity is an immunity from suit rather than a mere defense to liability. For that reason, this Court has held that denial of dispositive motions such as motions to dismiss that are grounded on governmental immunity affect a substantial right and are immediately appealable."
 
 Doe v. Charlotte-Mecklenburg Bd. of Educ.
 
 ,
 
 222 N.C. App. 359
 
 , 363,
 
 731 S.E.2d 245
 
 , 248 (2012) (internal citations, quotation marks, brackets, and ellipsis omitted). Therefore, we possess jurisdiction to hear the Board's appeal.
 

 II. Jurisdiction of Industrial Commission under
 
 N.C. Gen. Stat. § 143-300.1
 

 In order to analyze the Board's arguments, it is helpful to first review the basic principles surrounding a local school board's potential waiver of its immunity. As noted above, due to their status as governmental entities, local boards of education are immune from tort liability absent a waiver of their governmental immunity. The North Carolina General Assembly has provided for the waiver of their immunity in two ways.
 

 First, the Tort Claims Act waives the governmental immunity of school boards for certain types of negligence claims specified therein. The relevant portion of the Tort Claims Act dealing with claims arising from the operation of school buses is
 
 N.C. Gen. Stat. § 143-300.1
 
 . This statute states, in pertinent part, as follows:
 

 (a) The North Carolina Industrial Commission shall have jurisdiction to hear and determine tort claims
 
 *471
 
 against any county board of education or any city board of education, which claims arise as a result of any alleged mechanical defects or other defects which may affect the safe operation of a public school bus or school transportation service vehicle resulting from an alleged negligent act of maintenance personnel or as a result of any alleged negligent act or omission of the driver, transportation safety assistant, or monitor of a public school bus or school transportation service vehicle....
 

 N.C. Gen. Stat. § 143-300.1
 
 (a) (2017).
 

 Second, the General Assembly has authorized local boards of education to waive their governmental immunity from other types of tort claims through the purchase of liability insurance. Pursuant to N.C. Gen. Stat. § 115C-242, local boards can elect to waive their governmental immunity from tort actions in North Carolina's superior courts by purchasing liability insurance. That statute provides, in relevant part, as follows:
 

 Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.
 

 ....
 

 Provided, that this section shall not apply to claims for damages caused by the negligent acts or torts of public school bus, or school transportation service vehicle drivers, while driving school buses and school transportation service vehicles when the operation of such school buses and service vehicles is paid from the State Public School Fund.
 

 N.C. Gen. Stat. § 115C-42 (2017).
 

 *472
 
 We have held that-per the statute's concluding proviso- N.C. Gen. Stat. § 115C-42 "by its own terms, apparently does not apply to the type of claims which are covered by
 
 *663
 
 G.S. 143-300.1 [.]"
 
 Smith v. McDowell Cty. Bd. of Educ.
 
 ,
 
 68 N.C. App. 541
 
 , 543 n.1,
 
 316 S.E.2d 108
 
 , 110 n.1 (1984). Therefore, the statutory framework erected by the General Assembly does not provide for concurrent jurisdiction between the Industrial Commission and North Carolina's superior courts.
 
 See
 

 Stein v. Asheville City Bd. of Educ
 
 .,
 
 168 N.C. App. 243
 
 , 251,
 
 608 S.E.2d 80
 
 , 86 (2005) ("[I]f a plaintiff's claim against a Board of Education falls within the scope of
 
 N.C. Gen. Stat. § 143-300.1
 
 , then N.C. Gen. Stat. § 115C-42 excludes the claim from the waiver of immunity. Without a waiver of immunity, the Board of Education cannot be sued in superior court."),
 
 rev'd on other grounds
 
 ,
 
 360 N.C. 321
 
 ,
 
 626 S.E.2d 263
 
 (2006).
 

 As a result of these statutes, two principles are apparent: (1) the governmental immunity of local school boards no longer exists for claims falling within
 
 N.C. Gen. Stat. § 143-300.1
 
 and such claims must be brought in the Industrial Commission; and (2) all other tort claims against school boards not similarly covered by the Tort Claims Act are barred unless the school board has opted to purchase liability insurance that provides coverage for the specific claim being asserted and in such cases the claim must be brought in superior court.
 

 Based on the statutory language of
 
 N.C. Gen. Stat. § 143-300.1
 
 (a), it is evident that the Industrial Commission possesses jurisdiction over claims alleging negligence by school bus drivers, monitors, transportation safety assistants, or maintenance personnel. The question in this appeal, however, is whether the Industrial Commission also possesses jurisdiction over claims brought pursuant to § 143-300.1 that arise from the negligent acts of administrators. If so, then the Industrial Commission properly denied the Board's motion to dismiss in the present case. If not, then the Board's motion to dismiss should have been granted.
 

 Our Supreme Court has made clear that "[t]he state and its governmental units cannot be deprived of the sovereign attributes of immunity except by a plain, unmistakable mandate of the General Assembly. In addition, State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed."
 
 Irving v. Charlotte-Mecklenburg Bd. of Educ.
 
 ,
 
 368 N.C. 609
 
 , 611,
 
 781 S.E.2d 282
 
 , 284 (2016) (internal citations, quotation marks, and brackets omitted). "When we review a statute that operates to waive governmental immunity, the statute must not only be strictly construed, but also be given its plain meaning and enforced as written, so long as its language is clear and unambiguous."
 
 Id
 
 . at 615,
 
 781 S.E.2d at 286
 
 (internal citations omitted).
 

 *473
 
 In analyzing the parties' respective arguments in this appeal, we recognize at the outset that we are not writing on a clean slate. The seminal case from our Supreme Court addressing the scope of the Industrial Commission's jurisdiction to hear claims related to the operation of school buses pursuant to
 
 N.C. Gen. Stat. § 143-300.1
 
 is
 
 Huff v. Northampton County Board of Education
 
 ,
 
 259 N.C. 75
 
 ,
 
 130 S.E.2d 26
 
 (1963). In
 
 Huff
 
 , two high school students riding a school bus operated by the Northampton County Board of Education were involved in a fight that was broken up by the bus driver. Although the driver had been instructed to report any misconduct on the school bus to the principal of the high school, he failed to report this incident.
 
 Id
 
 . at 76,
 
 130 S.E.2d at 27
 
 . Seven months later, the same two students got into another altercation, and one of the students seriously wounded the other with a knife. On that day, a substitute bus driver with no knowledge of the prior altercation was driving the bus.
 
 Id
 
 . at 77,
 
 130 S.E.2d at 27
 
 .
 

 The victim filed claims in the Industrial Commission pursuant to
 
 N.C. Gen. Stat. § 143-300.1
 
 alleging negligence on the part of the two bus drivers as well as by the school principal for failing to have a bus monitor present on the date of the stabbing.
 
 Id
 
 . at 79-80,
 
 130 S.E.2d at 29
 
 . The Commission determined that "the plaintiff did not suffer any damages by any negligent act or omission of the defendant County Board of Education, nor were the damages suffered by the plaintiff reasonably foreseeable by the said Board of Education."
 

 Id.
 

 at 77
 
 ,
 
 130 S.E.2d at 27
 
 .
 

 On appeal, our Supreme Court affirmed the Commission's decision. In ruling that the
 
 *664
 
 plaintiff could not prevail on her claims arising from the alleged negligence of the school principal, the Court stated as follows:
 

 An award against a county board of education under the provisions of the Tort Claims Act
 
 may not be predicated on the negligent act or omission of a school principal or the county board of education
 
 , but if an award is made it must be based on the negligent act or omission
 
 of the driver
 
 of a public school bus who was employed at the time by the county or city administrative unit of which such board was the governing body.
 

 Id.
 

 at 77
 
 ,
 
 130 S.E.2d at 28
 
 (emphasis added).
 

 With regard to the victim's claims of bus driver negligence, the Court determined that the evidence was "insufficient to support a finding that the negligent acts or omissions of ... the drivers of the school bus involved, on the occasions complained of, were the proximate cause of the plaintiff's injuries."
 
 Id
 
 . at 80,
 
 130 S.E.2d at 29
 
 . The Court then
 
 *474
 
 reiterated that allegations of negligence on the part of other employees cannot be brought in the Industrial Commission:
 

 [A]s heretofore pointed out, the Tort Claims Act does not authorize a recovery against a county board of education for the negligent act or omissions of its agents, servants and employees
 
 except for a claim based upon a negligent act or omission of a driver
 
 of a school bus employed by the board from which recovery is sought.
 

 A county board of education, unless it has duly waived immunity from tort liability ..., is not liable in a tort action or proceeding involving a tort except such liability as may be established under our Tort Claims Act.
 

 Id.
 

 at 79
 
 ,
 
 130 S.E.2d at 29
 
 (emphasis added and citation and quotation marks omitted).
 

 Thus, the only logical reading of
 
 Huff
 
 is that the types of administrative negligence claims at issue in the present appeal cannot be brought in the Industrial Commission under
 
 N.C. Gen. Stat. § 143-300.1
 
 . To the contrary,
 
 Huff
 
 makes clear that only the limited types of claims expressly referenced in the statutory text may be brought under
 
 N.C. Gen. Stat. § 143-300.1
 
 .
 

 Plaintiffs contend, however, that the Supreme Court's ruling in
 
 Huff
 
 was modified by its later decision in
 
 Newgent v. Buncombe County Board of Education
 
 ,
 
 114 N.C. App. 407
 
 ,
 
 442 S.E.2d 158
 
 (1994) (Orr, J., dissenting),
 
 rev'd per curiam for reasons stated in dissent
 
 ,
 
 340 N.C. 100
 
 ,
 
 455 S.E.2d 157
 
 (1995). In
 
 Newgent
 
 , an elementary school student was struck and killed by an automobile while crossing a busy highway in order to reach his bus stop.
 
 Id.
 
 at 410,
 
 442 S.E.2d at 160
 
 . Prior to the accident, the school bus driver assigned to the child's route would "drive by ... the side on which the deceased child lived, traveling in a southerly direction. She would turn the school bus around and travel the same route in a [n]ortherly direction" before picking up the child on the side of the highway opposite where he lived.
 
 Id
 
 .
 

 The administrator of the child's estate filed a claim under the Tort Claims Act against the local school board in the Industrial Commission alleging that the bus driver had been negligent in "failing to inform the principal and decedent's parents of facts [she] observed and alternative routes [she] should have taken while operating the bus in the course of her employment."
 
 Id
 
 . No theory of negligence was asserted against any school board employee other than the driver. The panel majority in
 
 *475
 
 this Court held that the Commission lacked jurisdiction over this claim because the bus driver could not "be considered to have been operating the bus at the time of the negligent acts complained of[.]"
 
 Id
 
 . at 409,
 
 442 S.E.2d at 159
 
 .
 

 In a dissenting opinion ultimately adopted by our Supreme Court, however, then-Judge Orr determined that the Commission did possess jurisdiction.
 
 Id
 
 . Judge Orr explained his reasoning as follows:
 

 [A]t the time [the bus driver] was operating the bus in the course of her employment, she saw the decedent, an elementary aged child, cross the busy road twice on his own, and she could allegedly see that the bus stop was in an area of limited visibility for a pedestrian. Further, while she was operating the bus in the course of her employment, every morning [she] would drive by Frisbee Road in a southerly direction. If [she] had picked up decedent
 
 *665
 
 while she was traveling in a southerly direction instead of turning the bus around and picking him up while she was driving the bus in a northerly direction, decedent would not have had to cross the highway and thus be exposed to the danger of crossing the highway.
 

 The alleged acts and omissions of failing to inform the principal and decedent's parents arose out of events that occurred while [the bus driver] was operating the bus in the course of her employment.... While the majority relies on the language of
 
 N.C. Gen. Stat. § 143-300.1
 
 requiring that the driver be operating the public school bus "at the time of the alleged negligent act or omission" to defeat plaintiff's claim based on a lack of jurisdiction, I find the affidavit sufficient to set out facts arising from the actual operation of the school bus[.]
 

 Id.
 

 at 411-12
 
 ,
 
 442 S.E.2d at 160-61
 
 . Judge Orr further stated his belief that the legislature did not intend for
 
 N.C. Gen. Stat. § 143-300.1
 
 "to preclude the Industrial Commission from hearing tort claims wherein certain alleged negligent acts or omissions arose out of, and were inseparably connected to, events occurring at the time a school bus driver was operating the bus in the course of her employment."
 

 Id.
 

 at 409
 
 ,
 
 442 S.E.2d at 159
 
 .
 

 Thus,
 
 Newgent
 
 broadened the circumstances under which a school bus
 
 driver
 
 could be held liable under
 
 N.C. Gen. Stat. § 143-300.1
 
 . However, the fatal flaw in Plaintiffs' argument is that
 
 Newgent
 
 did not
 
 *476
 
 involve claims premised upon a theory of negligence against any school board employee other than the bus driver herself. Accordingly, it did not authorize-or, for that matter, even address-the type of administrative negligence claims foreclosed by
 
 Huff
 
 and at issue in the present appeal.
 

 This Court has applied the principles set out in
 
 Newgent
 
 in two published decisions.
 
 Stein
 
 involved the failure of a school bus driver and bus monitor to report a conversation the bus monitor overheard on a school bus in which two juveniles with behavioral disabilities discussed a plan to commit armed robbery and murder.
 
 Stein
 
 ,
 
 168 N.C. App. at 245
 
 ,
 
 608 S.E.2d at 82
 
 . Although the bus monitor informed the bus driver of the conversation, neither the driver nor the monitor informed anyone else associated with the school system of the juveniles' statements. One week later, the two juveniles participated in a crime in which two persons were robbed and shot.
 
 Id
 
 . at 245-46,
 
 608 S.E.2d at 82
 
 .
 

 The victims filed suit in superior court against the Asheville City Board of Education alleging that the bus driver and monitor were negligent in failing to report the conversation they had overheard.
 
 Id
 
 . at 251,
 
 608 S.E.2d at 86
 
 . The trial court dismissed the claims, holding that they were required to have been brought in the Industrial Commission. In affirming the trial court's ruling, we stated as follows:
 

 Plaintiffs argue that the statute does not apply because their claims do not arise as a result of any mechanical or other defect in the bus caused by a negligent act or omission of the driver.
 

 The plain language of the statute, however, makes it applicable not only to mechanical defects affecting the bus, but also claims arising "as a result of any alleged negligent act or omission" of a driver or monitor.
 

 ....
 

 Huff
 
 ,
 
 Newgent
 
 , and our review of other cases involving
 
 N.C. Gen. Stat. § 143-300.1
 
 establish that the Industrial Commission possesses jurisdiction over plaintiffs' claims against the Asheville Board.
 

 Id
 
 . at 250,
 
 608 S.E.2d at 85
 
 (citation omitted). Notably, no administrative negligence claims were asserted by the plaintiffs in
 
 Stein
 
 .
 

 The second published case from this Court applying
 
 Newgent
 
 is
 
 Stacy v. Merrill
 
 ,
 
 191 N.C. App. 131
 
 ,
 
 664 S.E.2d 565
 
 (2008). In
 
 Stacy
 
 , an elementary school student riding his bicycle home from school lost
 
 *477
 
 control and fell into the path of a moving school bus, resulting in his death.
 
 Id.
 
 at 132,
 
 664 S.E.2d at 566
 
 . The child's father filed a civil action against the Alamance-Burlington Board of Education and several of its administrators in superior court. The complaint alleged, in pertinent part, the following negligent acts:
 

 *666
 
 (1) designing a pedestrian, bicycle and vehicular traffic plan with no clearly marked pedestrian or bicycle lanes, with no fence, sidewalk, curb or other structure to separate pedestrian and bicycle traffic and vehicular traffic; (2) failing to supervise the elementary school children leaving the school campus; (3) failing to supervise or provide adequate training of bus drivers ...; (4) failing to provide a reasonably safe exit route for the students at Andrews Elementary; (5) failing to ensure a safe, alternate means of travel between home and school for students who were not provided transportation by defendants; and (6) failing to teach children who were not provided transportation the safe manner in which to walk, ride, and travel in order to avoid injury and/or death.
 

 Id
 
 . at 133,
 
 664 S.E.2d at 566
 
 .
 

 On the same day that the plaintiff filed the lawsuit in superior court, he also filed an action under the Tort Claims Act in the Industrial Commission.
 
 Id
 
 . at 133,
 
 664 S.E.2d at 566-67
 
 . In that proceeding, he alleged that the child's death was the result of negligence on the part of the school bus driver.
 
 Id
 
 . at 133,
 
 664 S.E.2d at 567
 
 .
 

 In the lawsuit filed in superior court, the trial court dismissed the plaintiff's claims for lack of jurisdiction. On appeal, this Court upheld that ruling.
 
 Id.
 
 at 134,
 
 664 S.E.2d at 567
 
 . Citing
 
 Newgent
 
 , we summarily stated-without any mention of
 
 Huff
 
 or any explanation of how administrative negligence claims could be encompassed within the narrow language of
 
 N.C. Gen. Stat. § 143-300.1
 
 -that "[u]nder the facts alleged in their amended complaint, plaintiffs' claims are inseparably connected to events occurring at the time a school bus driver was operating the bus in the course of his employment, and thus fall within the scope of N.C. Gen. Stat. 143-300.1."
 
 Id
 
 . at 136,
 
 664 S.E.2d at 568
 
 (citation, quotation marks, and brackets omitted).
 
 [3]
 

 *478
 
 Having reviewed the relevant case law, we now apply the principles contained therein to the present case. All of the parties to this appeal submit that confusion exists within the bench and bar as to the proper scope of the Industrial Commission's jurisdiction over administrative negligence claims in connection with the operation of school buses. We believe the source of this confusion is that our decision in
 
 Stacy
 
 cannot be reconciled with the Supreme Court's ruling in
 
 Huff
 
 . Quite simply,
 
 Huff
 
 makes clear that the Industrial Commission lacks jurisdiction over any claims other than those falling within the express language of
 
 N.C. Gen. Stat. § 143-300.1
 
 , meaning that the types of administrative claims asserted by Plaintiffs here cannot be brought in the Industrial Commission under the Tort Claims Act.
 
 Stacy
 
 , however, reaches the opposite result.
 

 As a general proposition, "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."
 
 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) ;
 
 see also
 

 State v. Jones
 
 ,
 
 358 N.C. 473
 
 , 487,
 
 598 S.E.2d 125
 
 , 134 (2004) ("While ... a panel of the Court of Appeals may disagree with, or even find error in, an opinion by a prior panel and may duly note its disagreement or point out that error in its opinion, the panel is bound by that prior decision until it is overturned by a higher court.").
 

 However, it is equally clear that "this Court has no authority to reverse existing Supreme Court precedent."
 
 Respess v. Respess
 
 ,
 
 232 N.C. App. 611
 
 , 625,
 
 754 S.E.2d 691
 
 , 701 (2014) ;
 
 see also
 

 Mahoney v. Ronnie's Rd. Serv.
 
 ,
 
 122 N.C. App. 150
 
 , 153,
 
 468 S.E.2d 279
 
 , 281 (1996) ("[I]t is elementary that we are bound by the rulings of our Supreme Court[.]" (citation omitted) ),
 
 aff'd per curiam
 
 ,
 
 345 N.C. 631
 
 ,
 
 481 S.E.2d 85
 
 (1997).
 

 In
 
 Respess
 
 , we declined to follow a prior decision of this Court where the decision "directly conflicts with prior holdings of ... our Supreme Court and therefore does not control our decision in the instant case."
 
 Respess
 
 ,
 
 232 N.C. App. at 625
 
 ,
 
 754 S.E.2d at
 
 700-01 ;
 
 see
 

 *667
 

 State v. Jones
 
 , --- N.C. App. ----, ----,
 
 802 S.E.2d 518
 
 , 523 (2017) ("We have examined [two Court of Appeals decisions] and conclude that these cases fail to follow the binding precedent established by [our Supreme Court], and as a result, do not control the outcome in the present case.");
 
 see also
 

 Cannon v. Miller
 
 ,
 
 313 N.C. 324
 
 ,
 
 327 S.E.2d 888
 
 (1985) (holding that this Court lacks authority to overrule decisions of our Supreme Court and possesses a "responsibility to follow those decisions, until otherwise ordered by the Supreme Court"). Based on those cases, it is clear that where a prior ruling of this Court is in conflict with binding Supreme
 
 *479
 
 Court precedent, we must follow the decision of the Supreme Court rather than that of our own Court.
 

 Accordingly, we are compelled to follow
 
 Huff
 
 instead of
 
 Stacy
 
 because
 
 Huff
 
 is a decision from our Supreme Court that has never been overruled. The only way that the holding in
 
 Huff
 
 would not be binding upon us would be if
 
 Newgent
 
 constituted a change in the law on this issue by the Supreme Court, thereby expressly or implicitly overruling
 
 Huff
 
 . However, that is not the case. As discussed above,
 
 Newgent
 
 dealt solely with the issue of bus
 
 driver
 
 negligence. The alleged negligent acts or omissions in
 
 Newgent
 
 that arose out of and were inseparably connected to the operation of the bus at the time of the accident were on the part of the driver herself. Administrative negligence claims simply were not at issue in
 
 Newgent
 
 .
 

 Thus, while
 
 Newgent
 
 had the effect of broadening the extent to which a school board may be found liable in the Industrial Commission under
 
 N.C. Gen. Stat. § 143-300.1
 
 based on a theory of bus driver negligence, it had no effect on the entirely separate question of where administrative negligence claims filed in conjunction with the operation of a school bus must be brought. Based on
 
 Huff
 
 , these claims can only be asserted in superior court-assuming that the board has waived its governmental immunity through the purchase of liability insurance.
 

 Because it is clear that
 
 Huff
 
 mandates our reversal of the Industrial Commission's order denying the Board's motion to dismiss, our analysis could end there. However, we take this opportunity to explain why this result faithfully applies the language actually used by the General Assembly in
 
 N.C. Gen. Stat. § 143-300.1
 
 .
 

 As noted above, in construing a statute courts must look first to the plain meaning of the statutory language.
 
 See
 

 Sharpe v. Worland
 
 ,
 
 137 N.C. App. 82
 
 , 85,
 
 527 S.E.2d 75
 
 , 77 ("We preface our analysis by noting that statutory interpretation begins with the plain meaning of the words of the statute. Where the plain meaning of the statute is clear, no further analysis is required. Where the plain meaning is unclear, legislative intent controls." (internal citations omitted) ),
 
 disc. review denied
 
 ,
 
 352 N.C. 150
 
 ,
 
 544 S.E.2d 228
 
 (2000).
 

 N.C. Gen. Stat. § 143-300.1
 
 sets out the exclusive circumstances under which the Industrial Commission possesses jurisdiction to hear claims against local boards of education arising from the operation of a school bus. Based on its clear text, the statute confers jurisdiction upon the Industrial Commission over claims alleging two discrete theories of negligence: (1) claims that arise as the result of a mechanical defect
 
 *480
 
 based on the negligence of maintenance personnel; and (2) claims that arise "as a result of any alleged negligent act or omission of the driver, transportation safety assistant, or monitor of a public school bus[.]"
 
 N.C. Gen. Stat. § 143-300.1
 
 (a). Nowhere in this statutory language is there any indication that claims based on separate theories of negligence relating to administrative matters such as the design of bus routes or staffing decisions within the school system are meant to be included therein.
 

 Reading
 
 N.C. Gen. Stat. § 143-300.1
 
 to nevertheless encompass such claims would require this Court to judicially rewrite the statute-a power that courts clearly lack.
 
 See
 

 Orange Cty. ex rel. Byrd v. Byrd
 
 ,
 
 129 N.C. App. 818
 
 , 822,
 
 501 S.E.2d 109
 
 , 112 (1998) ("Where there is no contention that the actions of the legislature violate constitutional safeguards, we are not free to either ignore or amend legislative enactments because when the language of a statute is clear and unambiguous, the courts must give it its plain meaning." (citation omitted) ). Indeed, this
 
 *668
 
 Court has previously stated that "the wording ... in G.S. 143-300.1 particularly, is clear and unambiguous."
 
 Smith
 
 ,
 
 68 N.C. App. at 545
 
 ,
 
 316 S.E.2d at 111
 
 .
 

 Plaintiffs and amicus curiae make various policy arguments in support of their contention that the administrative negligence claims at issue should be adjudicated in the Industrial Commission based primarily on their concerns about the potentially preclusive effect of governmental immunity on their ability to bring such claims in superior court. But such policy decisions are solely within the purview of the General Assembly.
 
 See, e.g.
 
 ,
 
 Rhyne v. K-Mart Corp.
 
 ,
 
 358 N.C. 160
 
 , 169,
 
 594 S.E.2d 1
 
 , 8 (2004) ("The General Assembly is the policy-making agency because it is a far more appropriate forum than the courts for implementing policy-based changes to our laws." (quotation marks omitted) );
 
 Shera v. N.C. State Univ. Veterinary Teaching Hosp.
 
 ,
 
 219 N.C. App. 117
 
 , 126-27,
 
 723 S.E.2d 352
 
 , 358 (2012) (holding that "this Court is not in the position to expand the law" and that "the numerous policy considerations presented by the issue raised in this case ... [are] more appropriately addressed to our Legislature");
 
 see also
 

 Jones v. City of Durham
 
 ,
 
 183 N.C. App. 57
 
 , 64,
 
 643 S.E.2d 631
 
 , 636 (2007) ("Any change in [the governmental immunity] doctrine should come from the General Assembly." (citation, quotation marks, and brackets omitted) ).
 

 Therefore, we conclude that the Industrial Commission lacked jurisdiction to hear Plaintiffs' administrative negligence claims. Accordingly, we hold that the Commission erred in denying the Board's motion to dismiss those claims.
 

 *481
 

 Conclusion
 

 For the reasons stated above, we reverse the 20 January 2017 order of the Industrial Commission and remand for proceedings not inconsistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and TYSON concur.
 

 [2]
 

 Throughout this opinion, we refer collectively to this category of claims against the WCPSS administrators as the "administrative negligence claims."
 

 [3]
 

 We further held in the alternative that even assuming
 
 arguendo
 
 the Industrial Commission did not have exclusive jurisdiction, the board had not purchased liability insurance covering the plaintiff's claims and, therefore, the board's governmental immunity had not been waived.