An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-54

Filed 5 November 2025

New Hanover County, No. 24SPC050095-640

IN THE MATTER OF: W.B.A.

Appeal by Respondent from an order entered 27 June 2024 by Judge Melinda H. Crouch in New Hanover County District Court. Heard in the Court of Appeals 27 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Jordan William Cansler, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant for the Respondent.*

WOOD, Judge.

Respondent W.B.A. ("Walter")[1] appeals from an order of involuntary commitment to an inpatient facility for thirty days. On appeal, Defendant contends the trial court erred by committing Respondent without first making findings of fact

---

[1] Pseudonyms are used to protect the identity of the respondent by stipulation of the parties pursuant to N.C. R. App. P. 42(a).

to establish he was a danger to himself or others. After careful review of the record, we vacate the trial court's order.

## I.    Factual and Procedural Background

On 18 June 2024, Walter's mother signed and presented to a Pender County magistrate an affidavit and petition for Walter to be involuntarily committed. Mother stated he had a diagnosis of psychosis, schizophrenia, and bipolar disorder and had a serious history of mental illness including three previous involuntary commitments. Additionally, Mother reported that Walter had taken a knife, stabbed the walls in his room, the hallway, and the bathroom, and after sustaining an injury to his hand, smeared blood on the walls. She reported Walter had not been eating or sleeping and was hearing, speaking to, and yelling at individuals who were not present. She feared he posed a danger to himself or others. Based upon Mother's affidavit, the magistrate found Walter met the criteria for involuntary commitment and entered a commitment order that same day. On 18 June 2024, the magistrate entered an order authorizing law enforcement to take Walter into custody for evaluation at a mental health facility.

On 27 June 2024, a commitment hearing was held to determine whether Walter would be committed further. At the initiation of the hearing Walter recorded a protest of his commitment and requested that the petition be dismissed because it was based on hearsay as neither his mother nor the two providers who examined him were present. Walter argued that any testimony would be hearsay and that he was being denied his due process right to confront his accusers. The trial court denied his

motion. Walter testified on his own behalf. Margaret Ward, a nurse practitioner from the facility where Walter had been housed, testified about her interactions with Walter, as well as the facility's concerns and recommendation that he continue to be involuntarily committed due to his paranoia, his inability to feel safe, and his previous threats involving a knife, which resulted in him hurting himself. She testified it was her belief that he remains a danger to himself and others at this time. The trial court found Walter remained a danger to himself and others and, following the recommendation of the facility, ordered him to be involuntarily committed for an additional thirty days. Walter filed notice of appeal on 11 July 2024.

## II. Analysis

Walter raises one issue on appeal, whether the trial court erred by ordering that he be involuntarily committed without first making findings of fact establishing that he was dangerous to himself or others. We agree. After careful review of the record, we hold the trial court failed to make the necessary findings and vacate the trial court's involuntary commitment order.

We recognize that the term of Walter's involuntary commitment has passed, however, "a prior discharge will not render questions challenging the involuntary commitment proceeding moot. When the challenged order may form the basis for future commitment or may cause other collateral legal consequences for the respondent, an appeal of that order is not moot." *In re Allison*, 216 N.C. App. 297, 299, 715 S.E.2d 912, 914 (2011) (cleaned up).

## A. Findings of Fact

"When we review a commitment order, our review is limited to determining '(1) whether the court's ultimate findings are indeed supported by the "facts" which the court recorded in its order as supporting its findings, and (2) whether in any event there was competent evidence to support the court's findings.'" *In re Moore*, 234 N.C. App. 37, 42-43, 758 S.E.2d 33, 37 (2014) (quoting *In re Hogan*, 32 N.C. App. 429, 433, 232 S.E.2d 492, 494 (1977)).

Walter does not challenge the evidence presented. Rather, he argues the trial court failed to make findings of fact necessary to support its order. "To support an inpatient commitment order, the court shall find by clear, cogent, and convincing evidence that the respondent is mentally ill and dangerous to self . . . or dangerous to others. . . . The court shall record the facts which support its findings." N.C. Gen. Stat. § 122C-268(j) (2024). In considering the facts necessary for an involuntary commitment order, "[t]here are two types of facts: Ultimate facts and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts." *In re Moore*, 234 N.C. App. 37, 43, 758 S.E.2d 33, 37 (2014) (cleaned up). "[I]t is mandatory that the trial court record the facts which support its findings." *In re Allison*, 216 N.C. App. 297, 300, 715 S.E.2d 912, 915 (2011); *see also In re Q.J.*, 278 N.C. App. 452, 463, 863 S.E.2d 424, 431, aff'd, 383 N.C. 333, 880 S.E.2d 675 (2021).

- 4 -

In the case *sub judice,* the trial court made a single statement of fact within the order. The trial court also checked the box on the commitment form incorporating the second evaluation, completed by Dr. Tesfa A. Gebremeskel ("Dr. Gebremeskel"), as findings of fact. This report included individualized facts that could have supported the ultimate facts of the trial court.

> 38 year old single male who lives with his mother. Long history of psychosis and substance abuse problem. Had been not taking his medication for few weeks. Now acutely psychotic. Delusional believes men with quantum stealth invisibility suit have been tormenting him, sexually abusing him and trying to kill him. He hears these men talking to him and what they want to do to him. Days before he was brought to ED he was trying to st[a]b these me[n] and in the process he was st[a]bbed the wall and injured his hand.

However, Dr. Gebremeskel did not testify at trial, and the report was not entered into evidence during the hearing. At the initiation of the hearing, Walter objected and raised due process concerns regarding confrontation as well as evidentiary and hearsay issues due to the fact neither examiner was present to testify. Furthermore, when the only testifying witness from the facility, the nurse practitioner, was asked if she was aware of Walter's diagnoses she responded, "I am not."

Our Supreme Court recently ruled on the issue of incorporating the contents of a non-testifying doctor's report into a hearing for involuntary commitment stating:

> Here the trial court incorporated Dr. Kirk's report after the hearing concluded. Dr. Kirk did not testify at the hearing; the report was not formally offered or admitted into evidence; and the trial court did not inform respondent that

> it was incorporating the report into its findings of fact. Accordingly, respondent could not cross-examine Dr. Kirk, challenge the findings in the report, or otherwise assert her confrontation right. The trial court thus violated respondent's confrontation right by incorporating Dr. Kirk's report into its findings of fact.

*In re R.S.H.*, 383 N.C. 334, 339, 881 S.E.2d 480, 484 (2022). In the case *sub judice,* Dr. Gebremeskel did not testify, and the report was not entered into evidence. The trial court did not inform Walter it was incorporating the report into its finding of facts and Walter expressly raised due process concerns regarding confrontation. The trial court clearly erred by incorporating the report into its findings of fact, and we cannot now consider it.

The sole remaining finding contained within the order itself states, "Respondent remains a danger to himself and others and continues to be paranoid and delusional. Commitment is necessary to prevent further deterioration or continued paranoia that would result in dangerousness." This is a statement of ultimate findings integrating the language from the statutory criteria necessary for involuntary commitment, but it fails to incorporate any individualized facts to support its ultimate findings. Failure to incorporate any underlying facts is fatal to an order of involuntary commitment because "unlike many other orders from the trial court, these 'ultimate findings,' standing alone, are insufficient to support the order; the involuntary commitment statute expressly requires the trial court also to 'record the facts upon which its ultimate findings are based.'" *In re W.R.D., III.*, 248 N.C.

App. 512, 515, 790 S.E.2d 344, 347 (2016) (quoting *In re Collins*, 49 N.C. App. 243, 246, 271 S.E.2d 72, 74 (1980)). "Whether or not there was sufficient competent evidence presented" is ultimately immaterial when the trial court fails to make any findings for an appeals court to review. *In re Booker*, 193 N.C. App. 433, 437, 667 S.E.2d 302, 304 (2008).

The trial court's sole finding of fact contains only ultimate findings and does not contain findings of fact from the evidence as statutorily required. Consequently, we must hold the trial court's findings of fact are insufficient to support the order for involuntary commitment. Having determined the trial court's order is not supported by sufficient findings of fact, we turn our attention to the remedy required.

Considering the limited admissible record evidence in this case in addition to the lack of necessary findings in the written order, we conclude the correct disposition in this case is to vacate the commitment order and remand the matter back to the trial court for additional findings of fact, if the trial court determines such findings are appropriate.

We acknowledge the assertion raised in Walter's brief that this Court previously reflected on a split in how we handled the disposition of cases when it was determined that there were insufficient findings to support an involuntary commitment. Some cases had been remanded for additional findings while others were not. *In re B.S.*, 286 N.C. App. 419, 426, 881 S.E.2d 721, 725-26 (2022). However, following *In re B.S.* our Supreme Court remanded a case to the trial court when the trial court's findings

were "insufficient to satisfy the statutory criteria for involuntary commitment." *In re C.G.*, 383 N.C. 224, 250, 881 S.E.2d 534, 552 (2022). As it is our responsibility to follow the precedent of our Supreme Court, we likewise remand. *Martinez v. Wake Cty Bd. Of Educ.* 258 N.C. App. 466, 478, 813 S.E.2d 658, 667 (2018).

### III. Conclusion

For the foregoing reasons, we conclude the trial court failed to make the necessary findings of fact to support its ultimate finding. Therefore, we vacate the commitment order and remand the matter to the trial court for additional findings of fact, if the trial court determines such findings are appropriate.

VACATED AND REMANDED.

Judges ZACHARY and STADING concur.

Report per Rule 30(e).